Filed 7/30/13  Saunders v. American Home Mortgage Servicing CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| STEVEN SAUNDERS, | C069145 |
| Plaintiff and Appellant, | (Super. Ct. No. TCV0001608) |
| v. | |
| AMERICAN HOME MORTGAGE SERVICING, INC., et al., | |
| Defendants and Respondents. | |

In this action, plaintiff Steven Saunders sought to stop a nonjudicial foreclosure sale of property he owns in Truckee based on the general premise that the entities seeking to foreclose had no right to do so.  The trial court sustained demurrers to his third amended complaint without leave to amend.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The following statement of facts takes as true "the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken" (*Fremont Indemnity Co. v. Fremont*

1

*General Corp.* (2007) 148 Cal.App.4th 97, 111) but ignores all "contentions, deductions or conclusions of law" in the complaint (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967).

Saunders owns property on Palisades Drive in Truckee (the property). In January 2006, he executed a promissory note in the amount of $486,000 to The Mortgage Outlet. The note was secured by a deed of trust on the property.[1] The deed of trust listed The Mortgage Outlet as the lender, Fidelity National Title as trustee, and defendant Mortgage Electronic Registration System (MERS) as the beneficiary and nominee for the lender and the lender's successors and assigns.

In August 2007, The Mortgage Outlet recorded an assignment of all beneficial interest under the deed of trust and the promissory note to Option One Mortgage Corporation (Option One). That assignment was signed by a "manager" for The Mortgage Outlet.

In March 2009, defendant American Home Mortgage Servicing, Inc. (American Home), as successor-in-interest to Option One, recorded an assignment of the deed of trust and the note to Deutsche Bank National Trust Company (Deutsche Bank) as trustee for the Certificateholders of Soundview Home Loan Trust 2006-OPT3, Asset-Backed Certificates, Series 2006-OPT3.

In April 2009, American Home, as the attorney-in-fact for Deutsche Bank, recorded a substitution of AHMSI Default Services, Inc. as trustee in place of Fidelity National Title.

---

[1] Some of the recorded documents referenced below were the subject of a request for judicial notice filed by American Home and MERS in support of their demurrer to Saunders's third amended complaint, which the trial court granted. This document was omitted from the clerk's transcript on appeal, but American Home and MERS have asked us to take judicial notice of it. We grant that request.

In April 2010, American Home, MERS, IndyMac Mortgage Services (IndyMac),[2] and ServiceLink caused a notice of default to be recorded against the property. The notice asserted that past due payments plus permitted costs and expenses were $19,231.81 as of April 14, 2010. The contact information in the notice was for Deutsche Bank care of American Home.

In May 2010, American Home, as the attorney-in-fact for Deutsche Bank, caused a substitution of trustee signed in March 2010 to be recorded, changing the trustee to Power Default Services, Inc. Later in May, an assignment dated in March was recorded in which MERS, acting as nominee for The Mortgage Outlet, assigned all beneficial interest in the deed of trust and the note to Sand Canyon Corporation, formerly known as Option One. In turn, Sand Canyon assigned all beneficial interest in the deed of trust and the note to Deutsche Bank as trustee for the Certificateholders of Soundview Home Loan Trust 2006-OPT3, Asset-Backed Certificates, Series 2006-OPT3, a securitized trust.

In June 2010, Saunders commenced this action by filing a complaint against a number of defendants, including OneWest Bank, American Home, MERS, and ServiceLink,[3] seeking to quiet title to the property based generally on the contention that the parties attempting to foreclose on the property had no legally recognized interest in the property and that no one had a secured interest in the property because there was no operable deed of trust. American Home and MERS demurred to the complaint. The resolution of that demurrer, and the possible existence of demurrers by other defendants, is unclear on the record before us. Nevertheless, Saunders subsequently filed a second

---

[2] IndyMac is a division of OneWest Bank, FSB. At various times papers have been filed in this action in the name of IndyMac and at other times in the name of OneWest Bank. We will treat them as one and the same.

[3] Saunders sued ServiceLink as Fidelity National Financial, Inc., doing business as ServiceLink. ServiceLink apparently appeared in the action as ServiceLink, a division of Chicago Title Insurance Company.

3

amended complaint, to which American Home and MERS demurred, as did IndyMac and ServiceLink. The trial court concluded the complaint was unintelligible and gave Saunders "one more chance to try and state a cause of action against these demurring defendants."

In April 2011, Saunders filed his third amended complaint. American Home and MERS filed a general demurrer and a special demurrer on the ground of uncertainty, as did IndyMac.[4] ServiceLink also filed a demurrer.[5]

On July 25, 2011, the trial court entered its ruling sustaining all of the demurrers without leave to amend. On August 5, 2011, the court entered an order of dismissal in favor of American Home, MERS, IndyMac, and ServiceLink. On August 22, 2011, Saunders filed his notice of appeal.[6]

---

[4] Saunders designated these documents for inclusion in the clerk's transcript but the superior court failed to include them. American Home and IndyMac have requested that we take judicial notice of the documents, and we grant those requests.

[5] Saunders designated his opposition to ServiceLink's demurrer for inclusion in the clerk's transcript, and it is included, but Saunders did not designate ServiceLink's demurrer for inclusion in the clerk's transcript, and that document is not included.

[6] Saunders' notice of appeal states that he is appealing a "[j]udgment of dismissal after an order sustaining a demurrer," but the notice of appeal erroneously indicates that the date of that judgment was July 25, 2011, when that was the date of the underlying order sustaining the demurrers without leave to amend, which is not appealable (*Beazell v. Schrader* (1962) 205 Cal.App.2d 673, 674). Nevertheless, because "[t]he notice of appeal must be liberally construed" (Cal. Rules of Court, rule 8.100(a)(2)), we construe Saunders's notice as an appeal from the order of dismissal entered August 5, 2011, which is an appealable order (*Diaz v. United California Bank* (1977) 71 Cal.App.3d 161, 166).

DISCUSSION

I

*Civil Code Section 2923.5[7]*

In his fourth cause of action,[8] Saunders alleged the notice of default was void because it did not include the due diligence declaration required by section 2923.5. The trial court concluded that this allegation did "not state a cause of action under California law."

Subdivision (b) of section 2923.5 provides as follows: "A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5." The notice of default here included the following statement: "The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil code 2923.5."

---

[7]     Undesignated section references are to the Civil Code.

[8]     Because Saunders's first cause of action (quiet title) depends in part on the viability of his remaining causes of action, we will reserve our discussion of the quiet title cause of action for the end of our opinion. Because Saunders offers no argument directed to his second, third, sixteenth, and eighteenth causes of action, we do not address them, taking his silence as a concession that the trial court properly sustained the demurrers to those causes of action. Because Saunders's fifteenth cause of action (breach of contract) was asserted only against The Mortgage Outlet, and The Mortgage Outlet was not one of the demurring defendants, we need not address that cause of action (even though the trial court's ruling purported to encompass it).

5

On appeal, Saunders asserts that "[t]he trial court erred in not requiring the defendant to be the Lender capable of complying with the requirements of Civil Code 2923.5." Saunders does not acknowledge or address the statement from the notice of default set forth above and does not otherwise explain how his allegations stated a cause of action given the inclusion of that statement.

"[T]o be successful on appeal, an appellant must . . . affirmatively demonstrate error on the record before the court. ' " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" [Citations omitted.]' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822, quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

In the absence of any real argument as to why the statement contained in the notice of default was insufficient to satisfy the requirements of subdivision (b) of section 2923.5, we conclude that Saunders has failed to carry his burden of showing that the trial court erred in sustaining the demurrers to this cause of action.

II

*Section 2924*

In his fifth cause of action, Saunders alleged the notice of default was void because it was not signed by the trustee, mortgagee, beneficiary, or any of their authorized agents; there was "no clear beneficiary from the face of the" notice; there was "no Statement saying they would satisfy the obligations 'secured by the Deed of Trust that is in default'"; and there was no recital of mailing. The trial court concluded these allegations "fail[ed] to state a cause of action that is recognized under California [law]."

Subdivision (a)(1) of section 2924 provides that before a power of sale in a deed of trust can be exercised, "[t]he trustee, mortgagee, or beneficiary, or any of their

6

authorized agents shall first file for record, in the office of the recorder of each county wherein the . . . trust property or some part or parcel thereof is situated, a notice of default." That notice must include various things. (§ 2924, subd. (a)(1)(A)-(D).)

On appeal, Saunders asserts "[t]he trial court erred in allowing non-parties to the Deed of Trust to succeed in their demurrer to Civil Code [] 2924," but he makes no real attempt to show how his complaint stated a cause of action for violation of that statute. In the absence of any comprehensible argument on point, Saunders has not carried his burden of showing that it was error for the trial court to sustain the demurrers to his fifth cause of action.

## III

### *Section 2924c*

In his sixth cause of action, Saunders alleged the notice of default was void because it did not "include contact information for the 'beneficiary or mortgagee.'" The trial court concluded that this allegation "fail[ed] to state a cause of action under California law."

Subdivision (b)(1) of section 2924c provides that a notice of default must begin with a statement that includes the name of the beneficiary or mortgagee, along with an address and telephone number for the borrower to contact. The notice of default here provided an address and telephone number for Saunders to contact Deutsche Bank care of American Home.

On appeal, Saunders contends "[a] review of the document should have been sufficient for the Court to see that [he] was correct and that the required [contact] information is missing." In support of this argument, he directs our attention to the *first* page of the notice of default. The contact information, however, is on the *second* page of the notice, which Saunders ignores. Under these circumstances, Saunders has shown no error in the sustaining of the demurrers to his sixth cause of action.

7

## IV

### *Section 2932.5*

In his seventh cause of action, Saunders alleged that none of the foreclosing defendants had the power to sell the property because none of the assignments of the right to the money owed under the promissory note were valid because three of the four assignments were not duly acknowledged. The trial court concluded that this allegation "fail[ed] to state a cause of action under California law."

Section 2932.5 provides that "[w]here a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."

On appeal, Saunders contends he adequately alleged "that the four (4) recorded Assignments violated this Civil Code [] 2932.5." The flaw in Saunders's argument is that "[i]t has been established since 1908 that this statutory requirement that an assignment of the beneficial interest in a debt secured by real property must be recorded in order for the assignee to exercise the power of sale applies only to a mortgage and not to a deed of trust." (*Calvo v. HSBC Bank USA, N.A.* (2011) 199 Cal.App.4th 118, 122.) Because section 2932.5 did not apply here, the trial court correctly sustained the demurrers to Saunders's seventh cause of action.

## V

### *Section 2934a*

In his eighth cause of action, Saunders alleged that the substitutions of trustee recorded in April 2009 and May 2010 were invalid because they were not signed by all of the beneficiaries under the deed of trust. The trial court concluded that Saunders had "failed to state any wrongdoing by the[] demurring Defendants."

Subdivision (a)(1) of section 2934a provides that "[t]he trustee under a trust deed upon real property or an estate for years therein given to secure an obligation to pay money and conferring no other duties upon the trustee than those which are incidental to the exercise of the power of sale therein conferred, may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by:  (A) all of the beneficiaries under the trust deed, or their successors in interest . . . ."

On appeal, Saunders contends he adequately alleged a cause of action for violation of section 2934a by alleging that all of the beneficiaries under the deed of trust did not sign the substitutions of trustee.  We disagree.  The documents subject to judicial notice showed that in April 2009, American Home, acting as the attorney-in-fact for Deutsche Bank, recorded a substitution of AHMSI Default Services, Inc., as trustee in place of Fidelity National Title.  Those documents also show that in May 2010, American Home and others caused a substitution of trustee to be recorded changing the trustee to Power Default Services, Inc.  In his brief, reiterating the allegations from his complaint, Saunders contends Deutsche Bank had no power to substitute a trustee and American Home could not act on behalf of Deutsche Bank because " 'the Attorney in Fact is not recorded as required under the subject Deed of Trust.' "  Beyond this, however, Saunders offers no argument, no explanation, and no facts.  Under these circumstances, we conclude Saunders has failed to carry his burden on appeal of demonstrating trial court error in the sustaining of the demurrers to his eighth cause of action.

VI

*Sections 2939, 2940, and 2941*

In his ninth, tenth, and eleventh causes of action, Saunders alleged that no certificate of discharge was recorded in connection with each of the assignments of the rights under the deed of trust and the promissory note.  The trial court concluded these allegations were barred by the statute of limitations and failed to state a cause of action.

9

Sections 2939, 2940, and 2941 contain various requirements relating to the recording of a certificate of discharge when a mortgage has been paid, satisfied, or discharged.

On appeal, Saunders contends his allegations were adequate to state a cause of action for violation of each statute. He is wrong. Section 2939 applies when a mortgage has been "paid, satisfied, or discharged," and section 2941 applies when a mortgage has been "satisfied." (Section 2940 merely requires that a certificate of discharge be recorded.) Here, the documents subject to judicial notice and the other allegations of Saunders's complaint make it clear that Saunders's debt under the promissory note was neither paid, satisfied, nor discharged. Rather, the original lender assigned away its rights to Saunders's performance (i.e., the payment of the money owed), and subsequent assignments of those rights also occurred. The assignment of the right to receive payments due under a promissory note does not result in the payment, satisfaction, or discharge of the obligation to make those payments -- it simply changes who is entitled to performance of the obligation. Because sections 2939, 2940, and 2941 do not apply to the assignment of a deed of trust and promissory note, the trial court properly sustained the demurrers to Saunders's ninth, tenth, and eleventh causes of action.

VII

*Section 1189*

In his twelfth cause of action, Saunders alleged that the assignment recorded in August 2007, the substitution of trustee recorded in May 2010, and the assignment recorded in May 2010 were all void because the certificate of acknowledgement completed by the notary with respect to each document failed to comply with section 1189. In particular, Saunders alleged the August 2007 assignment was void because the notary did not sign the certificate of acknowledgement under penalty of perjury, and the May 2010 substitution of trustee and assignment were void because the notary could not lawfully acknowledge that the persons who signed the documents acted in a "particular

10

representative capacity." The trial court concluded that these allegations "fail[ed] to state a cause of action under California law."

Subdivision (a)(1) of section 1189 prescribes the form for a certificate of acknowledgement taken within this state. The certificate must be made under penalty of perjury. (§ 1189, subd. (a)(1).) Subdivision (c) of section 1189 provides that "[o]n documents to be filed in another state or jurisdiction of the United States, a California notary public may complete any acknowledgment form as may be required in that other state or jurisdiction on a document, provided the form does not require the notary to determine or certify that the signer holds a particular representative capacity or to make other determinations and certifications not allowed by California law."

On appeal, Saunders contends in a conclusory manner that this cause of action was "adequately pled," but he makes no attempt to show how his complaint stated a cause of action. In particular, Saunders offers no authority for the proposition that when a certificate of acknowledgement is not signed by the notary under penalty of perjury, the document notarized is void. Similarly, he offers no authority for the proposition that it is unlawful for a notary to acknowledge that a signer acted in a particular representative capacity[9] or for the proposition that such an unlawful acknowledgement (assuming the unlawfulness) renders the notarized document void. Under these circumstances, Saunders has failed to carry his burden of showing that the trial court erred in sustaining the demurrers to his twelfth cause of action.

---

[9] To the extent Saunders intends to rely on subdivision (c) of section 1189 for his proposition of unlawfulness, that statute does *not*, by itself, provide that it is unlawful for a notary to acknowledge that the signer is acting in a particular representative capacity. At most, read in isolation that subdivision provides that on a document to be filed in another state or jurisdiction of the United States, a California notary public may not complete an acknowledgment form that requires the notary to determine or certify that the signer holds a particular representative capacity.

11

## VIII

### *Section 1190*

In his thirteenth cause of action, Saunders alleged that the assignment recorded in August 2007, the notice of default recorded in April 2010, the substitution of trustee recorded in May 2010, and the two assignments recorded in May 2010 were all void because they were not signed by a " 'duly authorized person.' " In particular, Saunders complained that the August 2007 assignment was signed by a manager and the remaining documents were signed by persons whose capacities were not stated on the documents. The trial court concluded that these allegations "fail[ed] to state a cause of action under California law."

Section 1190 provides that "[t]he certificate of acknowledgment of an instrument executed on behalf of an incorporated or unincorporated entity by a duly authorized person in the form specified in Section 1189 shall be prima facie evidence that the instrument is the duly authorized act of the entity named in the instrument and shall be conclusive evidence thereof in favor of any good faith purchaser, lessee, or encumbrancer. 'Duly authorized person,' with respect to a domestic or foreign corporation, includes the president, vice president, secretary, and assistant secretary of the corporation."

On appeal, Saunders contends in a conclusory manner that this cause of action was "adequately pled," but he makes no attempt to show how his complaint stated a cause of action. In particular, Saunders offers no authority for the proposition that a document signed on behalf of a corporation by a person whose capacity is either not shown or is shown as something other than president, vice president, secretary, or assistant secretary, is void. Under these circumstances, Saunders has failed to carry his burden of showing that the trial court erred in sustaining the demurrers to his thirteenth cause of action.

## IX

### *Section 1624*

In his fourteenth cause of action, Saunders alleged that all four assignments were void because they did not "assume the indebtedness by the purchaser in the conveyance." The trial court concluded that this allegation "fail[ed] to state a cause of action under California law."

Subdivision (a)(6) of section 1624 (the statute of frauds) provides that "[a]n agreement by a purchaser of real property to pay an indebtedness secured by a mortgage or deed of trust upon the property purchased" is invalid unless that agreement, "or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent," "unless assumption of the indebtedness by the purchaser is specifically provided for in the conveyance of the property." What this means, essentially, is that a promissory note by a purchaser of real property that is secured by a deed of trust on the property must be in writing, unless the promise to pay is included in the deed to (i.e., "the conveyance of") the property.

On appeal, Saunders contends in a conclusory manner that this cause of action was "adequately pled," but he makes no attempt to show how his complaint stated a cause of action under section 1624, nor can we even imagine how it might do so. The provision in the statute of frauds that the assumption of indebtedness by a purchaser of real property satisfies the statute if it is specifically provided for in the conveyance of (i.e., the deed to) the property simply has no bearing whatsoever on the validity of the assignments at issue here. Accordingly, the trial court did not err in sustaining the demurrers to Saunders's fourteenth cause of action.

## X

### *Wrongful Foreclosure*

In his seventeenth cause of action, Saunders alleged that defendants "are in the process of conducting a wrongful foreclosure as they have violated several laws for

13

maintaining a secured interest in a piece of real property." The trial court concluded that Saunders had "failed to state any facts alleging wrongdoing by any specific Defendant and [the cause of action] fails for uncertainty."

On appeal, Saunders cites the rule "that a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust" (*Munger v. Moore* (1970) 11 Cal.App.3d 1, 7) and then asserts without further explanation or argument that "[t]he above requirements are alleged in the 43 page [third amended complaint]." This is simply not sufficient to carry Saunders's burden on appeal. To the extent Saunders means to contend that his wrongful foreclosure cause of action is premised on the statutory violations alleged in the previous causes of action that we have discussed already, the failure of those previous causes of action (discussed above) necessarily dooms his derivative wrongful foreclosure cause of action. Accordingly, Saunders has shown no error in the trial court sustaining the demurrers to his seventeenth cause of action.

XI

*Quiet Title*

The first cause of action Saunders purported to allege in his third amended complaint was one to quiet title to the property. Saunders alleged that defendants were wrongfully claiming an interest in the property because he was not in default to them and they had not paid for the note that was secured by the property. The gist of his claim appears to be that because the promissory note was sold "into the secondary market to an unknown investor" (otherwise identified as "a securitized trust"), defendants had no interest in the note and therefore no right or standing to exercise the power of sale under the deed of trust.

In demurring to the third amended complaint, IndyMac argued that Saunders could not quiet title to the property "without alleging [that he is] able to tender the entire

14

indebtedness owing on the loan." American Home and MERS argued more broadly that Saunders's entire complaint, which challenged defendants' attempt to conduct a nonjudicial foreclosure sale, was barred because he did not allege that he tendered, or had the ability to tender, the amounts owed under the loan. American Home and MERS also argued that all of Saunders's claims were time-barred because the action was not commenced until nearly four and a half years after the loan closed. With respect to the quiet title cause of action in particular, American Home and MERS contended that Saunders had not alleged any wrongful conduct by either of them, the notice of default was properly recorded, and American Home was authorized to conduct the foreclosure sale as attorney-in-fact for the beneficiary, Deutsche Bank.

In sustaining the demurrer as to the quiet title cause of action, the trial court concluded that "an offer of tender of the entire indebtedness" was required, "failure to tender is fatal," and the cause of action was barred by the three-year statute of limitations.

A

*A Quiet Title Action Is Subject To Demurrer*

On appeal, Saunders first argues that a quiet title cause of action that alleges the plaintiff's ownership of the property and the defendant's assertion of an adverse claim is not subject to demurrer. In support of this argument, he quotes from *Leeper v. Beltrami* (1959) 53 Cal.2d 195, but he takes the language of that case out of context. As we will explain, properly read, *Leeper* does not support Saunders's argument.

In *Leeper*, the plaintiffs sought to cancel or set aside a deed they claimed they had conveyed out of duress. (*Leeper v. Beltrami*, *supra*, 53 Cal.2d at p. 211.) The question arose as to "whether, because the ultimate relief sought is recovery of real property, the five-year provisions of [Code of Civil Procedure] section 318 are automatically applicable, or should the plaintiffs be held to the ordinary rules applicable to rescission?" (*Id.* at p. 213.) In addressing that point, the California Supreme Court noted that "[t]he authorities on this subject are in confusion" and "[t]his confusion apparently arises out of

15

the failure of the cases to consider adequately the basic rights of the plaintiff arising out of defendant's wrongful conduct, and the failure to consider the substantive rules applicable to these basic rights." (*Id.* at pp. 212-213.) The court went on to explain as follows:[10]

"There are many cases holding that quiet title actions are of an independent nature completely divorced from the facts that give rise to the plaintiff's right to have his title quieted. *Thus it has been held that a complaint couched in general terms alleging plaintiff's ownership and defendant's assertion of an adverse claim is not demurrable. [Citations.] It has also been held that if a complaint is in two counts, one in general terms for quiet title, and the other specifying the defendant's wrongdoing which is the basis of the quiet title action, the complaint is not demurrable even though the specific count is faulty. [Citations.]* These cases seem to hold that suits to recover real property, where the relief sought is quiet title, must be viewed independently from the grounds upon which the relief is sought, and that the five-year statute is applicable.

"On the other hand, the more modern rule places more emphasis on the basic rights involved. Thus it has been held that, where the complaint is in two counts, one to quiet title, and one to cancel a deed, if the count to quiet title depends upon the cancellation count, the complaint must stand or fall on the cancellation count. [Citation.] And there are many cases holding that, where the legal title is in the defendant, and the plaintiff seeks to quiet title on the ground defendant's title was secured from plaintiff by fraud, the plaintiff must plead and prove facts constituting the fraud. [Citations.] It has been held that this rule requiring allegations of fraud in such actions is an exception to the general rule that a cause of action to quiet title may be stated in general terms. [Citations.]

---

**10** The italics in the following quotation are added to show exactly the part of the case that Saunders quotes in his opening brief.

"Thus the modern tendency is to look beyond the relief sought, and to view the matter from the basic cause of action giving rise to the plaintiff's right to relief. This approach is a sensible one." (*Leeper v. Beltrami*, *supra*, 53 Cal.2d at pp. 213-214.)

In quoting from *Leeper*, Saunders fails to quote most of the pertinent portion of the opinion. As the court succinctly explained later in the opinion, "[q]uieting title is the relief granted once a court determines that title belongs in plaintiff" but "the plaintiff must show he has a substantive right to relief before he can be granted any relief at all." (*Leeper v. Beltrami*, *supra*, 53 Cal.2d at p. 216.) Thus, a plaintiff cannot avoid a demurrer to a cause of action seeking to quiet title if the cause of action fails to adequately allege a substantive basis for the court to grant that relief. For this reason, Saunders cannot avoid the demurrers to his first cause of action just because that cause of action seeks to quiet title to the property.

B

*Tender Was Not Required*

Saunders next contends that the trial court erred in sustaining the demurrer based on his failure to tender the amounts owed on the loan. He contends that tender is required only where the plaintiff seeks to set aside a voidable foreclosure sale that has already happened, not where (as here, in his view) the plaintiff seeks to stop, before it has occurred, a foreclosure sale that will be *void* if it goes forward.

Support for Saunders's argument can be found in *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868. There, the court explained that "in the context of overcoming a voidable sale, the debtor must tender any amounts due under the deed of trust. [Citations.] This requirement is based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose." (*Id.* at pp. 877-878, italics omitted.) On the other hand, where the debtor is not relying on equity to set aside a merely voidable deed, but instead relies on the face of the record to

17

show that the deed is void, the debtor is not required to tender any of the amounts due under the note. (*Ibid.*)

It is true, as defendants assert, that "a mortgagor cannot quiet his title *against the mortgagee* without paying the debt secured." (*Shimpones v. Stickney* (1934) 219 Cal. 637, 649, italics added.) To some extent, however, the gist of Saunders's claim here is that the defendants who recorded the notice of default against his property and who seek to foreclose on the property are *not* the holders of the promissory note and therefore are *not* entitled to any amounts owed on the debt secured by the property. To that extent, this is not simply a case where the plaintiff alleges some mere irregularity in a foreclosure sale conducted by the party that was otherwise entitled to conduct that sale. Rather, Saunders alleges that defendants are *not* entitled to conduct a foreclosure sale of his property in the first place.

Over 100 years ago, our Supreme Court offered the following language, which is helpful here: "It has often been held that an action to set aside a sale by trustees or on foreclosure for irregularities of any kind should ordinarily be accompanied by an offer to redeem by paying the sum due. [Citations.] The plaintiff is held to compliance with the old maxim that he who seeks equity must do equity. [Citations] On the other hand, there are not a few cases holding that where a party has the right to avoid a sale, he is not bound to tender any payment in redemption. [Citations.] Whatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale." (*Humboldt Sav. Bank v. McCleverty* (1911) 161 Cal. 285, 290-291.)

Here, it would be inequitable to require Saunders to tender payment of any amounts owed under the promissory note in order to stop a foreclosure sale by entities that have no right to the amounts owed under the note and no right to sell his property to

18

collect those amounts. To that extent, the lack of tender does not support the trial court's ruling sustaining defendants' demurrers.

C

*The Action Is Not Time-Barred*

In arguing that all of the causes of action against them were time-barred, American Home and MERS asserted that Saunders's "allegations focus on the origination of a loan which closed in January, 2006" and "since [his] claim to quiet title is an action based on allegations of fraud or mistake, the three (3) year statute of limitations . . . applies." They also argued that all of Saunders's causes of action for statutory violations were similarly barred by the three-year statute.

On appeal, Saunders argues that the trial court erred in sustaining the demurrers based on the statute of limitations because he should not be held to "have discovered [at the outset] the MERS fraud and banking industry fraud that . . . hit the entire planet in 2006." He contends he is entitled to the benefit of the delayed discovery rule.

In response, American Home and MERS note that "[a]t least in part, the Quiet Title cause of action is founded upon [Saunders's] theory that MERS was 'fraudulently' named in the original deed of trust." They further argue that there are no allegations that justify reliance on the delayed discovery rule and that rule was not raised in the trial court and Saunders's argument on this point is not supported by citations to the record.

Despite Saunders's failure to argue otherwise, we do not perceive that his request to quiet title to his property was based on an allegation of fraud relating to MERS being named in the deed of trust as nominee on behalf of the original lender, its successors and assigns. Rather, it was based on the assertion that due to the various conveyances and assignments of the beneficial interests in the deed of trust property and the note, defendants had no right to any money due under the note and therefore no right to sell the property under the deed of trust. Thus, the assertion by American Home and MERS that Saunders's "allegations focus on the origination of a loan which closed in January,

19

2006" was not really true. The focus of the allegations was on the various conveyances and assignments that occurred *after* the loan closed. Under these circumstances, we conclude Saunders's complaint was not time-barred.

D

*Authority To Foreclose*

As we have noted, in demurring to the quiet title cause of action, American Home and MERS contended Saunders had not stated a cause of action because Saunders had not alleged any wrongful conduct by either of them, the notice of default was properly recorded, and American Home was authorized to conduct the foreclosure sale as attorney-in-fact for the beneficiary, Deutsche Bank. In particular, they pointed out that a notice of default may be recorded by the " 'the trustee, mortgagee, or beneficiary, or any of their authorized agents,' " and they noted that the notice of default here was recorded by T.D. Service Company as authorized agent for the beneficiary, Deutsche Bank. They also explained that to the extent American Home initiated the foreclosure process, it was authorized to do so as an agent for the beneficiary under the deed of trust.

In Saunders's argument challenging the sustaining of the demurrers to his quiet title cause of action, nowhere do we find any response to the foregoing assertions. To the extent Saunders intended to rely on the validity of his other causes of action (discussed above) to support his attempt to quiet title to the property, on the theory that because of the various statutory violations alleged elsewhere in the complaint the entities who were seeking to foreclose on the property had no right to do so, we have concluded already that Saunders has failed to show any error in the sustaining of the demurrers to his other causes of action. As a result, Saunders has failed to show that his complaint pleads any basis for concluding that the entities seeking to foreclose lack the right to do so. Absent such pleading, Saunders has shown no basis for quieting title to the property. Accordingly, the trial court did not err in sustaining the demurrers to Saunders's first cause of action.

20

## XII

### *Leave To Amend*

Saunders asserts at various places in his brief that the trial court should have given him leave to amend his complaint again, but he fails to offer any specifics as to how he could have cured the deficiencies in his complaint. This omission is fatal.

"The plaintiff bears the burden of proving there is a reasonable possibility of amendment. . . . [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citation.] Allegations must be factual and specific, not vague or conclusionary. [Citation.] [¶] The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.)

Under the foregoing rules, Saunders has failed to show any abuse of discretion in the trial court's denial of further leave to amend.

## XIII

### *Sanctions*

IndyMac has filed a motion to dismiss the appeal as frivolous and for sanctions against Saunders's attorney, Kathryn Reynolds, contending "no reasonable attorney

21

would have prosecuted this appeal against [IndyMac] because . . . [IndyMac] had nothing to do with the non-judicial foreclosure proceedings that are the subject of this lawsuit and appeal" and because Reynolds "has prosecuted this appeal with an improper motive: her personal disagreement with the Placer County Superior Court for what she perceived as an erroneous ruling."[11]

"[A]n appeal may be found frivolous and sanctions imposed when (1) the appeal was prosecuted for an improper motive -- to harass the respondent or delay the effect of an adverse judgment; or (2) the appeal indisputably has no merit, i.e., when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 310.)

IndyMac's assertion that no reasonable attorney would have prosecuted this appeal turns primarily on a statement that appeared in Saunders's opposition to IndyMac's demurrer to the third amended complaint. There, Reynolds asserted that "[t]he only reason Defendants ONE WEST BANK or INDYMAC SERVICES were named was the NOTICE OF DEFAULT came in an envelope with Defendants ONE WEST BANK or INDYMAC SERVICES name on it." According to IndyMac, "[a]n alleged name on an envelope is too flimsy a basis to associate OneWest with these non-judicial foreclosure

---

**11** American Home and MERS requested sanctions in their respondents' brief but did not file a separate motion for sanctions and did not file a declaration in support of their request. That is insufficient to put the issue of sanctions in favor of American Home and MERS properly before us. Rule 8.276(a) of the California Rules of Court provides that this court may impose sanctions "[o]n motion of a party or its own motion." Rule 8.54(a) provides that "a party wanting to make a motion in a reviewing court must serve and file a written motion stating the grounds and the relief requested and identifying any documents on which the motion is based," and the "motion must be accompanied by a memorandum." Rule 8.276(b)(1) further provides that "[a] party's motion under [rule 8.276](a) must include a declaration supporting the amount of any monetary sanction sought and must be served and filed before any order dismissing the appeal but no later than 10 days after the appellant's reply brief is due." American Home and MERS satisfied none of these requirements. Accordingly, we do not consider their request for sanctions further.

proceedings, particularly where the entirety of the public record, which counsel obviously consulted in detail, confirms the contrary."

In our view, the precise evidentiary basis for Reynolds's decision to name OneWest and IndyMac as defendants in this action cannot be determined reliably from an isolated statement in an unsworn opposition to a demurrer such that that statement may reasonably serve as the basis for finding that the action against those defendants (and the resulting appeal) was totally and completely without merit. We do not mean to say conclusively that Reynolds *had* a sufficient basis for pursuing this action against OneWest and IndyMac. We only conclude that on the record presented to us, IndyMac has not sufficiently shown that she did not.

As for IndyMac's claim that Reynolds prosecuted this appeal for an improper motive, IndyMac premises that claim in part on its assertion that the appeal totally lacked merit -- an assertion we have discussed already. Beyond that, IndyMac points to various statements Reynolds made in Saunders's opening brief that are openly disrespectful and disdainful of the trial court and its ruling. While we certainly do not condone those statements (see below), we do not perceive that they evidence an *improper purpose* for Reynolds's pursuit of this appeal. Although she certainly expressed her disagreement with the trial court inappropriately at various points in the opening brief, it still appears that her appeal on behalf of Saunders was motivated by an honest belief that the court's ruling was error. That is not an improper motive and cannot serve as the basis for an award of sanctions on appeal.

For the foregoing reasons, we deny IndyMac's motion to dismiss and for sanctions.

XIV

*Request To Strike Opening Brief And Contempt Of Court*

In its brief, IndyMac asked that we strike Saunders's opening brief and hold Reynolds in contempt of court because of various statements in Saunders's opening brief

23

that "impugn[] the integrity of the Placer County Superior Court and the Commissioner assigned to [t]his case."**12**

"There can be no doubt of the power of an appellate court to strike from its files a brief or other document containing disrespectful, scandalous, or abusive language directed against the courts, officials, or litigants, or to take such other action as the circumstances may require." (*Carpenter v. Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 314.) While we agree that various statements in Saunders's opening brief are disrespectful and disdainful of the trial court (see below), we nonetheless decline to strike the brief. As we have shown already, the brief contains no argument sufficient to justify reversal of the judgment of dismissal, and therefore IndyMac suffers no prejudice from our denial of this request.

As for IndyMac's request that we hold Reynolds in contempt, IndyMac points to only two cases as authority for this relief, and both of those cases involved a situation where the attorney made contemptuous statements about a court *to that court*. (*In re White* (2004) 121 Cal.App.4th 1453, 1477-1479; *In re Buckley* (1973) 10 Cal.3d 237, 246-250.) IndyMac offers no authority that directly supports a finding of contempt where

---

**12**     Among others, Saunders's opening brief contains the following statements:

"The trial court has no patients [*sic*] to properly review this case, and no understanding that a foreclosure requires the Note Holder to not only declare the default, but to collect the debt. There is no law that allows the trial court to be acting as a lap dog for the big banks. The Ruling on the demur [*sic*] is lazy and shows no legal analysis and a misreading of fact."

"The trial court again in its haste to rule for a top bank against the public wrongfully sustained this cause of action . . . . [¶] This is lazy and insulting to the Appellant spending time and money, and the public forced to use this court."

"The deeds of trust have been breached, and the [C]ivil [C]ode sections dedicated to maintaining the county records, are ignored by the courts in the Tahoe area, who blindly are handing over properties, ignoring the law."

24

an attorney makes contemptuous statements about a court to a *different court*.  In light of this absence of authority, we decline to hold Reynolds in contempt.  At the same time, however, we want to make clear that disrespectful statements like those put forth by Reynolds have *no* place in *any* appellate document.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.276(a).)


ROBIE            , Acting P. J.


We concur:


MAURO            , J.


DUARTE            , J.